Green, J.
delivered the opinion of the court.
Elizabeth Stokes, in the year 1802, on the eve of her intermarriage with Amos Johnson, in Onslow county, North Carolina, in conjunction with her intended husband, conveyed sixteen slaves, of which she was the owner, to Uz Williams, to hold in trust for the support and maintainance of the said Elizabeth, during her natural life. It is stipulated in the said deed, that “If the said Elizabeth die without lawful heirs of her body, one half of the negroes and their increase, are to return to her brothers *64 ’ anc^ sisters5 and the other part of the above named ne-groes, shall be to my use and disposal, as I shall see necessary, notwithstanding said marriage, at any time or times after said marriage takes place, without any let, hindrance, or interruption from him, the said Amos Johnson, or Uz Williams, or any thing herein contained to the contrary notwithstanding.” The marriage took effect. George W. Hackney married a daughter of Mrs. Johnson, in whose possession the negro girl in controversy was placed by her. The wife of Hackney died, and the negro was levied on at the instance of the defendant Looney, as the property of Hackney. In the mean time Johnson has died, and Mrs. Johnson has intermarried with complainant Prewet, and they bring this bill to enjoin the sale of the slave, and to obtain a decree therefor.
Whether the negro was given to Hackney, by Mrs. Johnson, or only loaned, is a question, in relation to which there is proof on both sides.
There is some ambiguity in the marriage articles, as to whether the concluding sentence of the part I have extracted, is intended to apply to Elizabeth Stokes, or to Amos Johnson; but I think, when it is attentively considered, it will plainly appear, that the language used can apply only to Elizabeth Stokes. The provision, that the half of the negroes should be at the disposal of the person to whom the word “my,” in this sentence, refers, “notwithstanding said marriage,” and without “let, hindrance, or interruption from him, the said Amos Johnson, or Uz Williams, or any thing herein contained to the contrary notwithstanding,” would be language having no sensible meaning, if used by either of the other parties than Elizabeth Stokes. Notwithstanding the marriage is to take place, whereby, according to law, she would lose all right to dispose of the negroes, and Amos Johnson would acquire a right to them; yet, by this article, she stipulates that such shall not be the consequence. *65 of the marriage, but that she will still retain in herself ,, .. , . , , , . ,, , , . the right of disposition without let or hindrance Irom him. By. the .deed, the title had been vested in Uz Williams, and she would have no power to dispose of the negroes on that account; but here she provides, that’without hindrance from Uz Williams, she still retains the right of disposition of one half the negroes, anything contained in the deed to the contrary notwithstanding. According to* the. plain meaning of the deed, therefore,-it is expressly stipulated, that as to the one half of this estate, the feme, after she shall become covert, is still to have- the powers of feme sole, and is to havd the right to dispose of the property, without alet or hindrance” from her husband or the trustee. Although the one half, which she is thus authorised to dispose of, has never been designated by a division between the trustee and Mrs. Johnson,- and, therefore, she had ho power; according to the case of Hackney vs. Williams, (6 Yerg. Rep. 343;). by any disposition she could make, to vest in a person receiving .a,'slave from her, a legal title thereto, it being held in ■common by herself and the trustee, witho.ut his consent; yet, she could part with all her interest in the property, and vest in the donee, all the right which she had reserved to'herself, by virtue of the deed. Her disposition of the property is not void, as it would have been, had she exceeded the powers conferred on her, by the' deed.
Had she and Williams divided the negroes, and designated the half - of which she was authorized to dispose, the donee, from her, would have taken an absolute title to the slave. Her inability to convey -a perfect title, therefore, does not result from_the fact, that she was a feme covert, for as to one half of this property, she had the powers of a. feme sole. In this view of the case, it is clear she has parted with all her right to the slave in controversy, if the fact be, that the slave had been given to Hackney. She could not, therefore, on account of Haclpiey’s defect of title; by reason of Williams’ joint *66 claim to the negro, be heard m this court to cuestión the deiendant’s right to levy his execution.
This brings us to the consideration of the question of fact, whether the negro was given, or only loaned, to . Hackney? This is a disputed fact, in relation to which there is proof on both sides. We will not undertake to decide this question, but would dismiss the bill, upon the authority of die cases of Loftin vs. Espy and Thomas, 4 Yerg. Rep., and Bryan vs. Earthman, 6 Yerg. 24, and leave the parties to litigate the right at law, were it not for the peculiar character of the claim of the complainants. But as the legal title is not in the complainants, it having been conveyed to Williams by the deed, we think the decree ought to be reversed, and the cause remanded to the chancery court; and the fact, whether the negroe was given or loaned only, to Hackney, should' be submitted to a jury upon an issue to be- made up for purpose.
Decree reversed.